I'm honored to first case this morning, call 2-11-13-19, Vernon Nelson et al. v. Aurora Equipment Co. On behalf of the appellant, Mr. Robert Blatt. On behalf of the athlete, Mr. Steven Wilson. Thank you. Good morning, counsel. I apologize for the late start this morning, but we're ready right now, Mr. Blatt. Good morning, your honors. Good morning. I see that you're using a crutch. Would you be more comfortable being seated and conducting the argument? I appreciate that, your honor. I'm okay at the podium. I just got to take some of the pressure off the right knee. I should be good. Thank you very much for your concern. Again, my name is Bob Blatt, and I'm here this morning representing plaintiff's appellant. Good morning, counsel. Good morning. May it please the court. This case arises basically under three concerns. Summary judgment, discovery, and successive motion practice before a different judge. I'd like to begin with a very salient point and quote from the recent Illinois Supreme Court decision in Pilot v. Pilot, that the standard for summary judgment is a formidable one. Moving from there, we've got discovery issues here, discovery cutoffs under this record. We have the suit being filed back in 04. We have a first discovery, factual discovery cutoff date set in May 5, 2007. That date, to me, seems a little arbitrary. It did allow for discovery to be cut off before the then-defendants in the case, Aurora Electric, and this defendant, Plenko, were allowed to file motions for summary judgment. But if you look at the record, even before that discovery cutoff date, that original discovery cutoff date, Plenko came into the case in December of 05. By March of 06, discovery had been answered, and there were already 201K letters going out. The record discloses the discovery being very contentious throughout that time. Well, how is this discovery issue relevant to the motion for summary judgment that was filed in 2011, counsel? The motion for summary judgment filed in 2011 was filed four and a half years after this original motion and four and a half years after this original cutoff date. At the time of filing, being a new motion and new plaintiff's counsel, counsel said, okay, here's this motion. We'd like to reopen discovery, realizing there's no trial date set at this time. There's no expert cutoff set at this time, and we had a four and a half year delay between this original motion for summary judgment and this original discovery cutoff date and where we're at now. But the witnesses that they wanted to depose were already known at the time of the first motion for summary judgment, correct? They weren't new witnesses. There, I cannot state with absolute certainty. Trial counsel indicated in the pleading that they were not new witnesses, and there was no excuse offered as to why they weren't interviewed or discovery hadn't been obtained. There was no excuse offered, no. That is correct, Your Honor. So they were known. I cannot state that 100%. If they were unknown, that would be an excuse, correct? That could be viewed in that fashion, yes. And what's the standard of review for us on that issue? The standard of review in terms of reopening discovery is, of course, abuse of discretion. So assuming that we don't find an abuse of discretion, what's your argument concerning the Gregory hearsay? The Gregory hearsay, Mr. Gregory, we assert, made assertions in his deposition that in combination with and in conjunction with the Rule 191B affidavit submitted with the latest motion for summary judgment, that raises true issues of material fact for resolution here. Mr. Gregory did observe the decedent working with, at the furnace Batavia plant. They did observe her using the granulated material out of the plankodrom. He did observe her breathing in the dust and particles emanating from that as she poured that into the molding. We have that in conjunction with the Rule 191B affidavit under other individuals who worked at furnaces, disclosing that, excuse me, that these were, during the same time period, that they were porous and fibrous materials used to make these same biscuits. That the fibrous materials were containing asbestos, and later on that furnace replaced the asbestos-containing materials. So you've got all these factors here, and I understand that there is an issue with Mr. Gregory's deposition testimony that he said, well, this salesman, he identified him as Otto or Otto Bus. The salesman for Plenco said it contained asbestos. He, Mr. Gregory, said it was a man named Baldwin. Oh, I'm sorry. Who didn't exist. I got those. Who didn't exist. He said Adlin said that, and it's actually Plenco saying it was the salesperson was Bus. My apologies to getting those two names inverted. Plenco says he doesn't exist. Counsel, setting aside the discovery issue for the moment, as I understand, your threshold argument is that the court erred in the first place in allowing the defendant to relitigate the summary judgment motion before Judge Morrow, after Judge Fabian had denied it, recognizing that Judge Fabian then granted a motion to re-examine the discovery. Correct. And I realize you've analogized this to some federal authorities. However, the Illinois Supreme Court said, as you may know in People v. Patterson, that a final judgment is required to sustain the application of the law of the case doctrine. Correct. Here, obviously, there was not a final judgment. Not a final judgment, Your Honor. So what was the legal impediment or prohibition against Morrow granting the motion? Well, what we're asserting here, Your Honor, is that it is the same motion that he ruled on before. And in particular, there were two prongs to the asbestosis case, and one of those prongs being the same product, or the product of this defendant, and the other prong being medical causation. There is a – the trial court's original determination in granting summary judgment relied upon paragraph 11 of Jeffrey Moore's affidavit, Jeffrey Moore being the Plenco-identified general counsel and secretary and the person stating he had familiarity with the records, stating we didn't ship products to – we didn't ship asbestos-containing products to furnace during the years in question. So are you saying Judge Fabian ruled on the product identification aspect of this now, in his first ruling or on the motion to reconsider? He ruled upon it in the first ruling. If you look at that ruling, that ruling specifically states, I am finding that paragraph 11 of Mr. Moore's affidavit shows that there are no issues of fact to be contested. And paragraph 11 of Mr. Moore's affidavit said we did not ship product to the Batavia plant for furnace during the time in question. So you're saying that in denying the motion for summary judgment, he ruled on both prongs? He did rule upon both prongs. So then, okay, let's turn to the motion to reconsider. Correct. Then what happened? The motion to reconsider from the record, we acknowledge stresses the medical causation prong. When you say stresses, what do you mean stresses? Specifically, Judge Fabian ruled in his order of February 5th that, and I'm reading paragraph 2, is to plastics engineering, plaintiff's motion to reconsider is granted. Correct. Provided plaintiff submits admissible evidence in the form of an affidavit, rule 191A, on the issue of medical causation within 21 days. Correct. All right. Then there's a sentence that says, otherwise, defendant plastics engineering's motion for summary judgment is denied. What does that sentence mean? Well, that sentence, when taken in context with everything that has gone on to this date, shows that the trial court did rule upon both prongs. So you're saying that second sentence says that the motion for summary judgment on the second prong, you're saying it relates to the second prong, the products identification? No. Or you're saying that the motion to reconsider only dealt with a medical causation prong? No. How do we sort this out, counsel? I think we can sort it out by seeing that originally, by granting summary judgment, the court found no genuine issue of material effect, both on the aspect raised in the primary motion, which was no clinical product, but also based upon the medical causation issue raised in the reply at that time. The motion to reconsider was brought to reconsider summary judgment in its entirety. The summary judgment or the motion to reconsider, the court allowed it, providing that there be a medical causation affidavit supplied in order to satisfy the court's view on that prong of it. But the original motion, the original order granting summary judgment, specifically recognizes and references paragraph 11 of the Jeffrey Moore affidavit, which says there is no genuine issue but that we didn't supply this product to furnace at the Batavia plant during this time. I don't know that I agree the record is a matter of clarity. I think you can see that there's some reading between the lines. But again, setting that aside, let's assume that it did. What I keep asking is, what legal prohibition was there for Moore, if he believes the first judge erred, from granting it in the end? What prohibited the second judge from doing that? Your Honor, we're asserting that there's two different ways that a non-final, well, there are two different ways a non-final order can be reviewed. One is if certain ways, if there is a discretion involved. Another way, if there is a clearly erroneous legal ruling. We don't have anything that says that the court was asked in this re-bringing of the second motion for summary judgment to say that this was a clearly erroneous ruling the first time. Do you have a case that suggests that a new judge coming into a case who is going over his, reviewing his call, reviewing the cases that are before him, and the party who believes the prior judge made either an error in law or a mistake in fact, that he can't review it de novo? Is there a case that says he can't do that? Or, alternatively, do you have a case that says the clearly erroneous standard applies to a trial court ruling on an interlocutory matter? The cases we have cited, and the only cases there are that I'm knowledgeable of, are the ones that give the general parameters for either a discretionary prior ruling that was interlocutory and non-final, or a one that was clearly erroneous. And our concern here is this wasn't addressed in terms of being clearly erroneous. It was addressed as if it was out of the blue a new motion, a discovery cutoff from four and a half years ago held in place. Are you familiar with Pence v. Metro, a 2010 first district case where the trial court denied Metro's motion for summary judgment, motion to reconsider, and then granted the motion? I'm sure I've read it. It's not ringing, the name itself is not ringing a bell right now. My question, if you can answer the question, are you aware of any cases that stands for the proposition you're articulating here that it's a clearly erroneous standard? Our concern here was that the court was never asked to address whether this prior ruling was clearly erroneous to be able to redo it in this fashion. Was that argument made in the trial court? I'm trying my best to recall the record. I do recall that counsel did raise these types of points and whether this was a clearly erroneous situation. I can't stand up here, honestly, your honor, and say with 100% certainty yes. And I don't want to say otherwise, obviously. Counsel, moving along to your other critical issue, and that is the issue of what evidence in the record suggested that Eva was exposed to asbestos from the defendant's product. So really hone in and give us succinctly what evidence you are suggesting is established in the record that Eva was in fact exposed to asbestos and how at the defendant's plant. Certainly. The evidence that we have of record currently, we have the testimony of Bill Gregory. Now, even discounting his statement that a salesman by the name of John Atlin told him that it contained the asbestos, he did see the decedent working with product coming out of the plant code drum. He did see the decedent breathing in dust from the product that was used to pour into the molding process for the plant code drum. But I have to stop you there. How do we know it was asbestos, that it contained asbestos? We then have the Rule 191 affidavit that was presented along with the second motion for summary judgment that talked about the aspects of, and I think I'll refer to this for a second, that the plant code or the furnace plant in Batavia molded the high voltage equipment. The high voltage equipment necessitated this more fibrous material to be poured into the molding to make the biscuit. And testimony that the fibrous material was, well, the fibrous material was there and that after a certain time, they stopped using the fibrous material as well as other materials due to concern over the containing of asbestos. All right, you'll have additional time on rebuttal. Thank you. Mr. Wilson. Good morning. Good morning. May it please the court, my name is Stephen Wilson and I represent the Capelli Plastics Engineering Company. My client typically goes by his trade name Planco and that's how I'll refer to him during this proceeding. Counsel, do you agree with Mr. Black that Judge Fabian ruled on both proms when he ruled on the first motion for summary judgment? I do not, Your Honor. It appears to us in reading the record as a whole and looking at the actual wording of his order that he only addressed the medical causation prong of the two-part cause and fact requirement. And if you look at it, it makes sense because in order to prevail, Planco would have to prove both prongs of the two-part medical, of the two-part cause and fact test. The first prong is medical causation, which basically means asbestos caused the injury. And the second prong is what's called product identification, where Plano has to show that Planco's product was a source of the injury. And counsel suggested here today that proof of ruling on both prongs is contained by the fact that Judge Fabian denied the motion to strike paragraph 11 in Jeff Moore's affidavit. That, we respectfully submit, doesn't make a showing that counsel says it does. All paragraph 11 said was that Planco made no sales to Furnace Electric in 1968 and in 1970. It was kind of rounding out the summary of sales made to that company during the time that Eva Nelson worked there. In fact, we went one year before Eva Nelson was employed to be sure to cover the entire work period. So we did sales records from 1966 to 1970. So we respectfully submit that paragraph 11, which was subject to a separate motion to strike, that was briefed separately by the parties, that does not show that Judge Fabian ruled on both grounds. Now what about in the motion to reconsider? That is a source of confusion. Okay. And what we've come to interpret that ruling as being is it's a mistake in the wording. So it's a scrivener's error? Yes. And the mistake is in the last sentence? Are you saying, do you have that order? When it says otherwise Plano's motion is denied. Right. Plastic engineering's motion of summary judgment is denied. We suggest that that should have said granted. And nobody caught that at the time? Apparently not. Apparently not. I know you're searching for an excuse. And I can also tell the court that the supposition that it's a scrivener's error is what Plano said in some of their papers below, which isn't a record. So they were assuming the same thing that we were. But I also have to tell you that this issue didn't really come to the fore until after we renewed our motion for summary judgment. Assuming for the sake of the argument, as it were, that, in fact, Fabian dealt with both prongs of the issue, again, the overarching question seems to be, let's assume for the sake of the argument that happened. Are you of any case law that precludes a second judge from coming along and doing a de novo review and overruling the first judge if he or she believes that the first ruling was erroneous? Is there any legal impediment to the second judge doing that? No, we would submit the contrary, Your Honor, that the cases cited in our brief basically stand for these fundamental propositions. Number one, a summary judgment is an interlocutory order. That can be changed at any time prior to final judgment. A successor judge can take a fresh look at it as long as there wasn't evidence of judge shopping and rule as Judge Morton did in this case. The cases we're relying on in particular are the Towns case, the Bunnell case, and the Bailey case. Those are all cited in our briefs, and it seems to me that reading those collectively shows that there's no impediment for the second judge taking a fresh look. So you're not saying that the facts and circumstances were different and would allow that, but that there was something wrong with Judge Fabian's decision? Is that right? I mean, which is your position? It has to be one or the other, correct? Our position is this. Number one, Judge Fabian did not rule on both grounds for summary judgment. But number two, even if he did, there's still no impediment for the second judge taking a fresh look at the case. What about Plato's argument that it was an abuse of discretion not to reopen discovery? We disagree with that, Your Honor. And I think if you step back, the way to analyze that issue, it seems to me, is this. You need to take a look at what went on in discovery from basically August of 2006 until May of 2007. And it's during that period of time that extensive discovery was provided to Plaintiffs. The discovery deadlines were bumped five or six times. Plaintiffs were allowed to depose Jeff Moore on two occasions, also depose three other witnesses from Planko. Planko produced several hundred documents, many of which had nothing to do with the sales to Furnace Electric. And Planko insisted, or at least Judge Fabian allowed plaintiffs to insist that Planko conduct another investigation about products that Bill Gregory mistakenly said were at the Furnace plant. It turns out they weren't, but Planko went ahead and conducted that investigation, and that's what that showed. So, in short, by May of 2007, it's our view that Judge Fabian gave plaintiffs every chance he could think of for them to come up with facts that would support their case, and they weren't able to do so. But it was fair for you to be able to bring a second motion for summary judgment that, in essence, really was about the same as the first in terms of the substance. Yes, I think that was fair. But it wasn't fair for them to be able to continue discovery. It would have been fair if there would have been any indication that further discovery would have changed these facts. The facts, as they stood at the end of when discovery was closed the first time in 2007, basically were that plaintiffs could not prove Nelson was exposed to a Planko asbestos-containing product. And incidentally, you were commenting when Appellant's counsel was here about the two witnesses that they sought to depose when they tried to reopen discovery in July of 2011. Those two witnesses were well known to the plaintiffs during the initial discovery period. And they're referred to in the 191B affidavit, correct? Actually, Your Honor, those are four different witnesses. But at the summary judgment hearing on our renewed motion, which was held about a year ago, the judge asked plaintiff's counsel if those witnesses were unknown at the time. And he admitted that they were known at the time. Basically, I think what plaintiffs are trying to do is establish a quid pro quo. Well, if you're going to get to move for summary judgment again, we honor your open discovery. But suggest those aren't comparable issues because the situation, the fact situations that they existed in May of 2007 weren't any different in 2011. Counsel, as you know, summary judgment is generally considered to be what is termed as sort of a harsh remedy. We only be granted when the moving party's right to summary judgment is freed from doubt. With regard to the exposure issue, can you tell us what exactly is it lacking in the evidence? Why didn't the plaintiff's case create issues of material effect? What's missing in the exposure issue? The key element we submit that's missing is evidence from plaintiff that Planko supplied an asbestos-containing product that was actually processed and molded at Furnace Electric during the time Nelson was there. The only evidence they have come up with to make that connection, which they must do under the Johnson case, which we cite, was Bill Gregory's testimony that this salesman named John Atkin or Altkin told him that. That statement is inadmissible hearsay. It doesn't come under a hearsay exception. And that's really the fundamental problem with the plaintiff's case. They don't have that evidence tying Nelson's work to a Planko product. In Mr. Black's argument, there was what I'll call some particulate matter being seen that Evo was exposed to this particulate matter at the factory. And that is evidence of an asbestos-related exposure. The problem with that argument, Your Honor, is we know from this record Planko admittedly did supply non-asbestos product to Furnace Electric during this time period. And that could well have been what Mr. Gregory was referring to. The only asbestos-containing product connected to Furnace was this 2010 green. It's a very small amount, hundreds of pounds. But the evidence shown through Planko's contemporaneous business records was that product, although sold to Furnace, the first five shipments were actually shipped to another molding company out in Pennsylvania. And the last two shipments of that product were actually processed and molded at a plant in Addison, Illinois. So the 2010 green was not used at the Furnace plant? Was not used at the Furnace plant. To the business record? Yes. And that was in the affidavit, correct, Mr. Moore's affidavit? I'm sorry? That was in the 191 affidavit? No. In his deposition? I'm sorry, that's in Moore's, yes. Right, in Moore's affidavit. Moore actually provided evidence of that in both of his depositions. He was first opposed in August of 2006. He stated the basis for this. Then he repeated it in his December deposition. And I have put the relevant portions of his transcript in our appendix so you don't have to go through the 14-volume record to find them. I'm sorry, you had a question? There was no suggestion or any evidence of any cross-contamination, mislabeling, like the Michigan case. No, there was no evidence of that. One other thing, back to the discovery, the initial discovery period for a moment. I would suggest that plaintiff, someone distorts the record when he's trying to describe for you how Plinko is resisting discovery at all turns and was playing tactical games and so on. I have just a couple of examples of that. One is Plinko's allegation that basically right off the bat at the end of May in 2006, plaintiffs had to move to compel discovery from Plinko. And he cites for that page 512 of the common law record. If you look at page 512 of the record, that's a motion that Plinko is bringing to try to compel discovery from plaintiffs. So that's certainly not evidence of Plinko being resistant to discovery. The second thing is plaintiff argues in his reply brief that there's no evidence all of the sales records of Furnace were ever produced in this case. We object to that characterization, too. Mr. Moore, in his December 2006 deposition, made it very clear that he brought with him all the sales records, the business records, and the call reports that did deal with Furnace Electric. So we just suggest that those concepts are suggestions by plaintiff that just aren't true. I wanted to, if I could, go back. Excuse me, Your Honor. I have one other question. Remember what you were going to say. With regard to your contention that the second sentence in this February 8th order, the last word is a mistake. It should have been granted instead of the word denied. We don't have a transcript of this February 8th that goes with the February 8th order. Would a transcript reflect what you have just told us? I don't know because I'm not aware that there was a transcript kept of that hearing. There was one of the November 2007 hearing, but I'm not aware if there was one for the February hearing. There may be. I just don't know. Okay. You wanted to make one other point. I wanted to make one other point before going, and I appreciate your allowing me to do so. Plaintiff has also suggested in his reply brief that the Carlos Bedrosian affidavit provides some evidence that Nelson was exposed to a Plinko asbestos-containing product, and he also says that we dispute that and have raised our dispute for the first time on appeal. That's not true either. In our reply brief to Judge Morrow, we raised the point that the Carlos Bedrosian affidavit on the issue of identifying the Plinko product can be ignored because it's based on an admissible hearsay. We also discussed that during the summary judgment oral argument that was held just about a year ago before Judge Morrow, and that transcript is in our supplementary appendix. So, in other words, the point is we've raised below, and we continue to press it here on appeal. Thank you, counsel. Thank you. Mr. Black. As your honors have identified, the record on appeal in this matter before the second motion for summary judgment is less than clear. Looking at that second sentence of the order which grants reconsideration, quite frankly, what that second sentence means is open to serious conjecture. Well, is there a transcript that would enlighten us? We don't have one available, your honor, at present. I'm not aware that one exists. But it might. Is that correct? Civil cases? I mean, we don't know, right? Kane County, 2007, didn't have court smart, didn't have the court reporters, to my knowledge, there that were automatically. Unless somebody brought a court reporter in. Unless somebody brought one in, there may not be. That's certainly true. But when we're looking, you know, we still have to go to the rationale behind discovery and what discovery is all about. Discovery is about fairness and the ascertainment of truth for the purpose, the dual purpose, of both a fair trial and fair settlement. We have a situation here where, regardless, discovery was contentious and discovery was fought. We have a motion by the plaintiff and motions to quash by Plenco in the record before the 2007 cutoff that concern, you know, plaintiffs wanting Plenco's records keeper. Plenco saying, you know, we're not going to provide you with our record keeper, but we will provide you with our general counsel. Was counsel correct regarding the motion to compel that it was actually Plenco's motion to compel? I did look at the record and he is correct. And I apologize to the court for that one right there. There is a subsequent motion in June that does, that is brought by the plaintiffs to compel and does contain a Rule 201-K letter attachment. I did double check that while counsel was speaking. My apologies to the court for that citation error. But the other issues that we have here in terms of plaintiffs, I believe it was a January motion to continue the discovery cutoff date, which our brief alludes to, says, we have been trying to get records from Plenco. We've been trying to get the record keeper. We've been trying to identify salespersons. All we keep getting is Jeffrey Moore, Jeffrey Moore, Jeffrey Moore. But there has been, there is a history in this record of contentious discovery situations. And we do have a situation where four and a half years passes and they renew the summary judgment motion. If it's okay to renew it four and a half years later, why isn't it okay then in terms of our dual purposes behind discovery of the total ascertainment of truth? The ascertainment of truth would really to be to rebut Moore's affidavit, Moore's deposition testimony, because he had and produced the sales records, correct? He produced sales records. And if you see his testimony here of record, he is less than clear about what he's been talking about. That's what our brief mentions, is that, well, I believe it to be this way. It appears so. Well, that's a little out of context, isn't it, counsel? He used those words really with something pretty specific. He wasn't referring to all of the information, for instance, regarding the 210 Green and the receipt of that buy. He was being asked specific questions about whether Plenko's records were complete. At that point, no, he was not being asked specifically about the 210 Green, but he was being asked, are Plenko's records complete? Do you have cross-referencing to make sure that these records are complete? And that's where we believe he equivocated and said, yeah, we have this system that was in place. It's by invoices. Yeah, I believe they say this. I believe they say that. That's his testimony. Mr. Blank, relative to the discovery issue, we've been alluding this morning to this four-and-a-half-year hiatus between the 2007 proceedings and the 2011 proceedings. I don't know if you were trial counsel, but can you tell me what was going on in that four-and-a-half-year period? Nothing. Plenko's brief admits that there was a level of inactivity. Plenko's brief talks about during the appeal by Aurora that nothing went on because the trial court did not have jurisdiction here. Well, this was a 304A appeal, so obviously the trial court did have jurisdiction. But that still doesn't explain the time between remand in November of 2009 to the time when new counsel came on board for the plaintiffs June of 2011, and then the following month they renewed the motion for summary judgment. I hear that my time is up unless there are any other questions. Obviously, we're asking that the judgment of the summary general in the circuit court be reversed and may be remanded for further proceedings. And thank you for your time and hours. Thank you very much. Thank you, counsel. The court will take the matter under advisement and render a decision in due course. We stand in brief recess until the next case.